UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>MARCELA LOPEZ-LOPEZ dba LAS DELICIAS CENTRO BOTANERO<br><br>Defendant. | No. 2:17-cv-01908-MCE-GGH<br><br><br><br>ORDER |

*PROCEDURAL HISTORY*

The Complaint in this matter was filed September 14, 2017, ECF No.1, alleging that on September 17, 2016 defendant permitted the unlawful interception and broadcast of a sporting event, the Saul Alvarez v. Liam Smith WBO World Super Welterweight Championship Fight Program, to which plaintiff had the exclusive nationwide commercial distribution rights for closed-circuit broadcast. Id. at ¶¶ 9, 11, 14. Pursuant to its rights plaintiff executed sub-licensing agreements with commercial establishments. ECF No. 9-1at 6:10-12. Defendant was not one of plaintiff's sub-licensees. Id. at 6:13-15. On November 30, 2017 a summons served on defendant was returned executed with a response due on December 4, 2017. ECF No. 4. No response having been received by December 13, 2017 plaintiff requested entry of default, ECF No. 5, and the Clerk of the Court entered the default on the same day. ECF No. 6. On January 22, 2018

plaintiff filed the Motion for Default Judgment which is the subject of this Order.  ECF No. 7.

*PLAINTIFF'S COMPLAINT*

The complaint alleges federal question jurisdiction, 28 U.S.C. § 1331, under the Communications Act of 1934, 47 U.S.C. § 605, et seq. (Count 1),[1] the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, et seq. (Count 2),[2] as well as supplemental jurisdiction under 28 U.S.C. § 1367 for California tort claims for conversion (Count 3), and violation of California Business and Professions Code § 17200 (Count 4).  Plaintiff seeks statutory damages, attorneys' fees and costs for the federal claims and punitive damages under Counts 1 and 2, compensatory and punitive damages and fees and costs under Count 3, and restitution, declaratory and injunctive relief, fees and costs under Count 4.

*STANDARDS TO BE APPLIED*

A.  *Liability Determination*

The general rule applied when a court determines liability pursuant to default is that the court need not make detailed findings of fact, Adriana Int'l Corp v Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1987), but rather that the well-pled allegations in the complaint regarding liability are deemed true.  Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1997), *citing* Pope v. United States, 323 U.S. 1, 12 (1944); see also Scott Johnson v. Chae Sun Lee, 2018 WL 2328887 (E.D.Cal. 2018) *citing* Televideo Systems, Inc. v. Heidenthal 826 F.2d 915, 917-918 (9th Cir. 1987); Federal Rule of Civil Procedure 8(d)(6): "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."  Of course, the court has the discretion not to enter default on legally frivolous claims, but such is not the case here.  Thus, defendant's liability for the infractions alleged is established in this case if the entry of default is, itself, found to be proper by the court.

---

[1] The salient portion of this statute states: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

[2] Section (a)(1) of this statute states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

*B.     Exercise of Discretion re Entry of Judgment*

The Ninth Circuit has identified seven (7) factors that may be considered by courts in exercising discretion as to the entry of a default judgment to be: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471–1472 (9th Cir.1986). In applying the Eitel standards the district courts in this circuit have found that default judgments are more often granted than not. See, e.g., Philip Morris USA, Inc., 219 F.R.D.2d 494, 498 (C.D. Cal. 2003) *citing* PepsiCo. v. Triunfo-Mex, Inc., 189 F.R.D. 432, 432 (C.D.Cal. 1999). Applying those factors in this case demonstrates that default judgment is appropriate.

      1.     *The Possibility of Prejudice to the Plaintiff*

The proof of service filed on November 30, 2017, was executed under penalty of perjury by Jade V. Meyers, a registered California process server, and states clearly that plaintiff effected proper service on the defendant pursuant to the California Code of Civil Procedure. The process server left copies of the complaint at defendant's place of business by presenting them to Nancy Barroso, Chef, who was authorized to accept service, on November 13, 2017 at 11:52 a.m., after making three attempts to personally serve the named defendant, and then mailed copies via first-class mail to the person to whom copies were delivered on November 14, 2017. ECF No. 4; see Cal. Civ. Proc. Code 415.20; Fed. R. Civ. Proc. 4(e)(1). There is no indication that defendant, a business operator, is an infant or an incompetent person, or that she is in the military service or otherwise exempted under the Soldiers' and Sailors' Relief Act. See ECF No. 5-1 at ¶ 5.

It is indisputable that having done everything the law required to engage the defendant in defense of the suit without success, in the absence of a default judgment plaintiff will be unable to vindicate its rights. There can be no greater prejudice.

      2.     *The Merits of Plaintiff's Substantive Claim*

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment

programming that purchased and retained the commercial exhibition licensing rights to the program at issue. ECF 7-4 at ¶ 3. Plaintiff marketed the sub-licensing (commercial exhibition) rights in the program to its commercial customers. Id. at ¶ 3 and n.1. Plaintiff contends that persistent signal piracy of its programming costs the company, its customers and the community millions of dollars annually. Id. at ¶¶ 5, 12-13. Plaintiff believes this results in part from the perceived lack of significant consequences (including nominal or minimal damage awards by the courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates. (Doc. 10–4 at ¶ 12.) As such, Plaintiff requests the maximum allowance for statutory violations, totaling $110,000.00. (Doc. 10–4 at ¶ 13.)

        3.     *The Sufficiency of the Complaint*

As can be seen in the discussion above, the plaintiff's complaint is sufficient and serves to establish the merits of its substantive claims. Plaintiff's investigator visited the site of defendant's business on the night of the broadcast, attests to the facts and describes the scene – four screens, all playing the fight that is the subject of plaintiff's license -- and she described the layout of the venue, indicates it had a capacity of approximately 50 people and that she observed at least 23 people present for the fight. ECF No. 7-3, notarized Declaration of Jennifer Eggert.

        4.     *The Sum of Money at Stake in the Action*

Plaintiff seeks money damages for willful violation of section 605. As plaintiff notes this court has held that that willfulness and the purpose of commercial advantage are demonstrated by the default of the defendant after proper service of process has been effected, as happened here. See J & J Sports Productions, Inc. v. Tilakamonkul, 2011 WL 2414550 *4 (E.D.Cal. 2011). In Tilakamonkul the defaulting defendant broadcast a pirated transmission of a major championship fight to an audience of only 8 patrons, and the court recommended an award of enhanced damages of $10,000 under section 605(e)(3)(C)(i)(II), $20,000 under section 605(e)(3)(C)(ii) and conversion damages of $2,200.00 for a total award of $32,220.00. Id. In another case in which a similar program was displayed to 23-25 patrons on a single television screen of the four screens in the pirate's place of business the award was $10,000 and $36,000 for a total award of $46,000. J & J Sports Productions, Inc. v. Rafael, 2011 WL 445803 *2 (E.D.Cal.

2011).  Here the higher award seems to have turned on the greater number of patrons and the fact that the pirate charged a cover charge for attendance. Plaintiff cites several other Eastern District of California cases with similar awards also predicated on the same basic principles.  See ECF 7-1 at 14-15.

Here plaintiff suggests no specific amount of statutory damages, but does request conversion damages in the amount of $1,800.00, the amount that plaintiff charged for sublicensing to establishments of the size of defendant's business.

     5.    *The Possibility of a Dispute Concerning Material Facts*

As noted above, in a default judgment situation such as the one here, the facts alleged in a well-pleaded complaint are to be accepted as true for purposes of the fashioning of an award.  See infra at 2:19-3:5.  Defendant, having avoided personal service, and been served by proper substitute service rules, has waived its opportunity to contest the facts proffered by plaintiff.  J & J Sports Productions, Inc. v. Hernandez, 2011 WL 3319558 (E.D.Cal. 2011)

     6.    *Whether the Default was Due to Excusable Neglect*

Under the circumstances present here, there is not, nor could there by, any indication of excusable neglect between multiple attempts to personally serve summons on the named individual defendant, conversations with an employee with authority to accept service, and complete compliance with substitute service rules.  This is not a case of neglect, it is a case of willful attempted avoidance of the consequences of defendant's tortious actions.

     7.    *The Strong Policy Favoring Decisions on the Merits*

Where there is no way to try a case on the merits there is no means by which to satisfy this policy absent the exercise of this court's discretion and thus the gravamen of this factor it does not impact the analysis here in a negative manner.  Eitel, supra.

C.    *THE STATUTORY DIRECTIVE*

The relevant provisions of 47 U.S.C. section 605, which addresses the unauthorized publication or use of wire or radio communications and pursuant to which plaintiff brings this default action, states:

    (a) ... no person receiving, assisting in receiving, transmitting, or assisting in

5

> transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney.... No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The concern that ultimately resulted in the penalties for violation of the section 605is clearly expressed in the House Report of the Committee on Energy and Commerce. At page 83 of that Report the Committee expressed its extreme concern "with a problem which is increasingly plaguing the cable industry – the theft of cable service. . . " This theft, the Committee opined at page 83 of the Report, in pertinent part

> is depriving the cable industry of millions of dollars of revenue each year which it should otherwise be receiving. The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.
> Existing section 605 of the Communications Act of 1934 includes a prohibition against the unauthorized reception of communications services. . . .
> Section 634 of the bill sets forth liability provisions specifically applicable to theft of services offered over a cable system, while also providing specific criminal penalties and civil remedies for violations of the section.

At page 85 of the Report the Committee goes on to state that it "believes that this problem is of such severity that the Federal penalties and remedies contained herein must be available in all jurisdictions (and enforceable in state or Federal court) as part of the arsenal necessary to combat this threat.

*CONCLUSION*

In light of the foregoing statement of concern this court will exercise its discretion in

6

setting a penalty for the uncontested violation of the Act at a level intended not only to punish the present defendant but to make clear that these incursions will be treated with the severity necessary pursuant to the Acts of Congress.

IT IS THEREFORE ORDERED that:

1. The plaintiff's motion for default judgment is GRANTED;

2. Judgment shall be entered in this action against Marcela Lopez-Lopez, dba Las Delicias Centrl Botanero;

3. Damages in the total amount of $46,800.00 are awarded as follows:

	a. Statutory damages in the amount of $35,000.00;

	b. Enhanced damages in the amount of $10,000.00;

	c. Damages for conversion of plaintiff's property in the amount of $1,800.00;

	d. Plaintiff shall file its Motion for assessment of attorneys' fees and costs with supporting documentation 30 days from the date of this Order.

**IT IS SO ORDERED**.

Dated: September 3, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE